JAMES E. COOPER and JO ELLA COOPER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cooper v. Commissioner
Docket No. 38199-84.
United States Tax Court
T.C. Memo 1987-334; 1987 Tax Ct. Memo LEXIS 334; 53 T.C.M. (CCH) 1304; T.C.M. (RIA) 87334; July 6, 1987. *334 During 1981 and 1982, Ps were employed and filed joint Federal income tax returns but they claimed that their wages were not taxable because they were payable in Federal Reserve notes. Ps also claimed that they were in the horse-breeding business in those years, and they incurred certain medical expenses for which they claim deductions under sec. 213, I.R.C. 1954. Held:
(1) The wages are taxable income. (2) Ps are liable for addition to tax under sec. 6653(a)(1) and (2), I.R.C. 1954, for negligence or intentional disregard of rules and regulations. (3) Ps did not engage in the horse-breeding activities with the actual and honest objective of making a profit. (4) Ps are not allowed medical deductions under sec. 213, I.R.C. 1954, because they failed to prove that the expenses were not reimbursed. James E. Cooper and Jo Ella Cooper, pro se. Brett J. Miller, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' Federal income taxes: Additions to Tax
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
Year
Deficiency
I.R.C. 1954
I.R.C. 1954
1981
$24,392.83
$1,219.64
50% of the
interest due on
$24,392.83
1982
13,788.16
689.41
50% of the
interest due on
$13,788.16
*337 After concessions, the issues remaining for decision are: (1) Whether wages received by the petitioners during 1981 and 1982 are taxable; (2) whether the petitioners engaged in their horse-breeding activities with a profit objective within the meaning of section 183; (3) whether the petitioners' medical expenses for 1981 and 1982 are deductible under section 213; and (4) whether the petitioners are liable for the additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a)(1) and (2). FINDINGS OF FACT The petitioners, James E. and Jo Ella Cooper, husband and wife, maintained their legal residence in Mooresville, Indiana, at the time the petition in this case was filed. They filed their joint Federal income tax returns for 1981 and 1982 with the Internal Revenue Service. Mr. and Mrs. Cooper were both employed by General Motors Corporation, Detroit Diesel Allison Division (GM), in Indianapolis, Indiana, during 1981 and 1982. The petitioners normally left for work at 2:00 p.m. and returned home at 12:30 a.m. Occasionally, *338 Mrs. Cooper worked overtime, and on those days, she left for work as early as 11:00 a.m. Mrs. Cooper has had major surgery on a number of occasions in the 1980s, and in 1981, she was absent from work on sick leave for several months. In 1977, the petitioners bought six acres of land on which they built their residence. During 1979, since they both liked horses, the petitioners decided to begin a breeding farm. They started building a barn in 1980 which remained unfinished at the time of the trial of this case. The petitioners then purchased a mare and a registered stud. They purchased a second mare that turned out to be sterile. The petitioners also purchased a gelding for their children. In 1983, the registered stud attacked and almost killed the gelding and bit the petitioners' son. Because of these unfortunate mishaps and Mr. Cooper's dislike of the economic and managerial aspects of the horse activity, the petitioners sold all of their horses in 1984. The petitioners conducted the horse-breeding activity on the same six acres as their personal residence was located. They never kept any books or records in ledger form indicating expenses for their horse-breeding and sales *339 activity. They never showed the horses, nor did they attend horse shows. The petitioners rode the horses which they had purchased for the breeding activity for recreational purposes, and feed acquired for such horses was also used for their children's horses. The petitioners subscribed to one publication, Horse Rider Magazine, incident to the horse-breeding activity. Neither of the petitioners ever attended any course at any local college concerning the horse-breeding and sales activity. The petitioners never hired a consultant nor requested a survey of their facilities in order to determine the feasibility of the horse-breeding activity in that area. The petitioners did not sell any horses during 1981 or 1982. They utilized the field breeding method of impregnation by leaving the stud and mare in the open pasture. There were three unsuccessful attempts to breed the mare which was capable of reproducing. During 1981 and 1982, the petitioners incurred a number of medical expenses. However, the petitioners could not establish that they had not been reimbursed for a number of such expenses. The petitioners were covered by a Blue Cross and Blue Shield medical insurance plan *340 maintained by GM during 1981 and 1982. On their Federal income tax returns for 1981 and 1982, the petitioners reported the wages received by them from GM and certain other income, but they treated the wages and most of the other income as not taxable because they were payable in Federal Reserve notes. The petitioners showed that they had no tax liability for such years. In his notice of deficiency, the Commissioner determined that the wages and other income received by the petitioners were taxable and that they were liable for the additions to tax under section 6653(a)(1) and (2) for negligence or intentional disregard of rules and regulations. OPINION At the trial of this case, the petitioners claimed that if their wages and other income are taxable, they are entitled to a number of deductions, including deductions for the expenses of their horse-breeding activity and for their medical expenses. The Commissioner conceded that the petitioners are allowed many of the deductions claimed by them. Four issues remain for our decision. The first of these issues is whether wages received by the petitioners are required to be included in gross income. The petitioners bear the burden *341 of proof concerning this issue. Rule 142(a), Tax Court Rules of Practice and Procedure.[2] Both of the petitioners received wages in 1981 and 1982, and there is no dispute as to the amounts. Section 61(a) states that "gross income means all income from whatever source derived, including (but not limited to) * * * compensation for services." It is well settled that wages, payable in Federal Reserve notes for services, are income within the meaning of Federal taxing statutes, and the petitioners' contention to the contrary is frivolous and does not merit further discussion. Lonsdale v. Commissioner,661 F.2d 71 (5th Cir. 1981), affg. a Memorandum Opinion of this Court; United States v. Buras,633 F.2d 1356 (9th Cir. 1980); United States v. Benson,592 F.2d 257 (5th Cir. 1979); United States v. Ware,608 F.2d 400 (10th Cir. 1979); Rowlee v. Commissioner,80 T.C. 1111 (1983); Gajewski v. Commissioner,67 T.C. 181 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). *342 The next issue for decision is whether the petitioners engaged in their horse-breeding activities with a profit objective within the meaning of section 183. This issue is one of fact to be resolved, not on the basis of any one factor, but on the basis of all of the facts and circumstances of the case. Engdahl v. Commissioner,72 T.C. 659, 666 (1979); Allen v. Commissioner,72 T.C. 28, 34 (1979). Section 183(a) provides that if an individual engages in an activity, and if that activity is not engaged in for profit, then no deduction attributable to that activity shall be allowed except as provided in such section. Section 183(b)(1) states that deductions which would be allowable without regard to whether the activity is engaged in for profit shall be allowed, and section 183(b)(2) provides that deductions which would be allowable only if the activity is engaged in for profit shall be allowed, but only to the extent that gross income from the activity exceeds the deductions allowable by reason of section 183(b)(1). Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are *343 allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Deductions are allowable under section 162 for expenses of carrying on activities which constitute a trade or business of the taxpayer and under section 212 for expenses incurred in connection with activities engaged in for the production or collection of income. Except as provided in section 183, no deductions are allowable for expenses incurred in connection with activities which are not engaged in for profit. Sec. 1.183-2, Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., lists some of the relevant factors to be considered in determining whether or not an activity is engaged in for profit. These factors include: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, *344 if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure and recreation. For an activity to be engaged in for profit, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued the activity, with the actual and honest objective of making a profit. Dreicer v. Commissioner,78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). In the present case, the manner in which the petitioners carried on the activity tends to show no profit objective. The petitioners failed to maintain any books or records in ledger form showing expenses or income relating to the horse-breeding activity. They never showed the horses and never attended any horse shows. There were three unsuccessful attempts to impregnate the mare capable of reproducing. Thus, this horse-breeding activity was not carried on in a businesslike manner, and such circumstances are indicative of an absence of a profit motive. Sec. 1.183-2(b)(1), Income Tax Regs.
Another factor to be considered is the expertise of the petitioners or their advisors. Preparation for the activity by extensive *345 study of its accepted business, economic, and scientific practices, or consultation with those who are expert therein, may indicate that the taxpayer has a profit motive where the taxpayer carries on the activity in accordance with such practices. Sec. 1.183-2(b)(2), Income Tax Regs. However, neither petitioner ever attended any course at any local college concerning the horse-breeding activities. They never hired a consultant or expert nor requested a survey of the facilities in order to determine the feasibility of the horse-breeding business in that area. With the exception of subscribing to one magazine concerning horse breeding and sales, the petitioners offered no evidence of their expertise or of any advisors. The time and effort expended by the taxpayer is also a relevant factor. Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. The petitioners were both employed full-time during the years at issue as employees of GM, except for several months in 1981 when Mrs. Cooper was off on sick leave. *346 They were employed on the second shift which required them to leave home at approximately 2:00 p.m. and return at 12:30 a.m. Mrs. Cooper occasionally worked overtime causing her to leave home as early as 11:00 a.m. Neither petitioner withdrew from employment to engage in the horse-breeding activity. The petitioners earned substantial income from working at GM in 1981 and 1982 from which they wish to offset expenditures for this horse-breeding activity. The evidence presented indicates that the petitioners spent a large amount of their time and effort working for GM. They have offered no credible evidence that they expended sufficient time and effort in the horse-breeding activity to indicate a profit motive. The personal pleasure and recreation elements in this case also indicate no profit objective. The presence of personal motives in the carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved. Sec. 1.183-2(b)(9), Income Tax Regs. The petitioners testified that they both rode the horses for recreational purposes. In addition, the hay and barn, claimed to be secured for the *347 business, were also used to feed and shelter the horses belonging to their children. The evidence of personal and recreational use of the horses and facilities is yet another relevant factor indicating the absence of any good-faith profit objective. The petitioners put forth no credible evidence reflecting any profit objective during the time they were engaged in the horse-breeding activities. After considering all the circumstances, we are convinced that the petitioners' horse-breeding activities were not engaged in for profit within the meaning of section 183(a), and the petitioners have not shown that they are entitled to deduct any of the expenses of such activity. Sec. 183(b). The third issue to be decided is whether the petitioners' medical expenses for 1981 and 1982 are deductible pursuant to section 213. Once again, the petitioners bear the burden of proof concerning this issue. Rule 142(a). They presented numerous exhibits which allegedly represent medical expenses incurred during 1981 and 1982. Section 213(a) allows a deduction, subject to certain limitations, for expenses, not compensated for by insurance, paid for the medical care of the taxpayer, his spouse, *348 and dependents. A deduction is allowable only with respect to medical expenses actually paid during the taxable year. Sec. 1.213-1(a), Income Tax Regs.
To be entitled to deduct a medical expense, the petitioners must also show that they did not receive reimbursement of the expense. During the years in issue, the petitioners were insured by Blue Cross and Blue Shield through their employer, GM. The insurance was characterized as "major medical" by the petitioners. Yet, the petitioners admitted that they were unsure whether or not they were reimbursed for a number of their expenses. The petitioners failed to convince us that they were not reimbursed for some portion of their medical expenses. Therefore, we must hold that none of the medical expenses are deductible; to do otherwise would require this Court to engage in mere speculation. The final issue for decision is whether the petitioners are liable for the additions to tax under section 6653(a)(1) and (2) on the grounds that all of the petitioners' underpayment of income taxes was due to negligence or intentional disregard of rules and regulations. The petitioners have the burden of proof on this issue. Rule 142(a); Enoch v. Commissioner,57 T.C. 781 (1972). *349 The petitioners offered no evidence or explanation as to the reasons for their underpayment; therefore, we hold that they are liable for the additions to tax as determined by the Commissioner. Because of concessions by the Commissioner, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩